FILED

**United States District Court**
**Eastern District of Virginia**

2013 OCT -3  A 8: 33

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

---

The **NATIONAL ORGANIZATION FOR MARRIAGE, INC.**
606 South Taylor Street
Arlington, VA 22204

*Plaintiff,*

*v.*

The **UNITED STATES OF AMERICA,**
**INTERNAL REVENUE SERVICE**
Serve: Eric H. Holder
Attorney General for the United States
Department of Justice
Room B-103
950 Pennsylvania Ave. NW
Washington DC 20530-0001

Serve: Dana J. Boente
United States Attorney for the Eastern District of Virginia
ATTN: Civil Process Clerk
Justin W. Williams United States Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314

*Defendant.*

Civ. No. 13-*1 225*
*JCC/IDD*

**VERIFIED COMPLAINT**

**JURY DEMAND**

---

## Verified Complaint

Plaintiff, the National Organization for Marriage ("NOM"), by and through its counsel, complains against Defendant United States of America, Internal Revenue Service as follows:

## Introduction

1.     This is an action seeking damages pursuant to 26 U.S.C. § 7431 for unlawful inspection and disclosure of confidential tax information by agents of the Internal Revenue Service ("IRS") in violation of 26 U.S.C. § 6103.

2.      In March 2012, individuals employed by the IRS inspected and disclosed NOM's

confidential return information, including its 2008 IRS Form 990, Schedule B, which contains

the names, home addresses, and contribution amounts of NOM's 2008 donors, to one or more

third parties, including NOM's ideological opponent, the Human Rights Campaign ("HRC"), and

to one or more employees, agents, or volunteers of HRC. On information and belief, the

individuals from the IRS chose to make this disclosure to one or more third parties, including

HRC, specifically intending that those third parties would widely publish the information on its

website, through media releases and interviews, and through other methods. NOM's confidential

return information was subsequently published on the Internet by third parties, including HRC

and the Huffington Post, an internet blog and public affairs website, making it available to

millions of people. These disclosures are part of a deliberate attempt to chill the First

Amendment activity of NOM, its donors, and others who associate with NOM. The IRS's

actions constitute gross violations of NOM's statutory and constitutional rights and have caused

appreciable harm to NOM for which it must be compensated.

3.      NOM brings this action against Defendant United States of America, IRS

pursuant to 26 U.S.C. § 7431 for the recovery of statutory and/or actual and punitive damages

caused by Defendant's willful, unauthorized disclosures and inspections of NOM's confidential

tax return and return information in violation of 26 U.S.C. § 6103.

## Jurisdiction and Venue

4.      This Court has jurisdiction over the United States in this venue under 12 U.S.C. §

1391(e) because NOM is a resident of this district.

5.      This action is being brought within two years after the date of discovery by NOM

of the unauthorized disclosures and inspections described herein. 26 U.S.C. § 7431(d).

2

## The Parties

6.      Plaintiff NOM is a nonprofit corporation validly existing under the laws of the State of Virginia. NOM's current mailing address is in care of its registered agent Paul Bothwell:

>       606 South Taylor Street
>       Arlington, VA 22204

7.      Defendant the United States of America, IRS is a proper defendant pursuant to 26 U.S.C. § 7431(a).

## Factual Allegations

### Unauthorized Inspection and Disclosure of NOM's Confidential Return Information

8.      NOM was founded in 2007 to protect marriage and the faith communities that sustain it across the United States. In furtherance of its mission, NOM serves as a national resource for marriage-related initiatives at the state and local level.

9.      NOM is recognized by the IRS as a social welfare organization, exempt from taxation pursuant to 26 U.S.C. § 501(c)(4).

10.     Pursuant to 26 U.S.C. § 6033, tax-exempt entities are required to file annually IRS Form 990 with the IRS.

11.     Schedule B (Schedule of Contributors) to IRS Form 990 is the list of donors to tax-exempt organizations who have contributed $5,000 or more during the reporting period and includes the following return information: the name of the donor, the address of the donor, and the total amount of the donor's contributions to NOM.

12.     Pursuant to 26 U.S.C. § 6104, certain portions of IRS Form 990 must be made available for public inspection. Accordingly, NOM posts these publicly available documents on its website. However, Schedule B, in unredacted form, is filed solely with the IRS and is not a publicly available document. Specifically, the Internal Revenue Code ("IRC") provides,

3

"Nothing in this subsection shall authorize the Secretary to disclose the name or address of any contributor to any organization or trust . . . which is required to furnish such information." 26 U.S.C. § 6104(b).

13.     To date, NOM has timely filed its IRS Form 990 for each reporting period.

14.     On March 30, 2012, NOM became aware that the unredacted Schedule B to its 2008 IRS Form 990, containing the names and addresses of its donors (hereinafter the "Confidential Return Information"), had been unlawfully inspected and disclosed by individuals employed by the IRS to one or more persons at the HRC, which subsequently shared it with one or more persons at the Huffington Post, an internet blog and public affairs website. On information and belief, the IRS employees chose to share the Confidential Return Information with HRC intending that HRC further publish the information on its website, through media releases, and through other means.

15.     On or about March 30, 2012, HRC published the Confidential Return Information on its website.

16.     On March 30, 2012, the Huffington Post published the Confidential Return Information on its website. The Huffington Post claimed to have received NOM's 2008 Schedule B from HRC and stated that HRC received the document from a "whistleblower."

17.     NOM has demanded that HRC and Huffington Post remove the Confidential Return Information from their websites.

18.     HRC has since removed the 2008 Schedule B document from its website, but continues to publish the Confidential Return Information gleaned from NOM's 2008 Schedule B.

19.     The Huffington Post has refused to remove any of the Confidential Return Information, including NOM's 2008 Schedule B, from its website.

4

20. NOM's 2008 Schedule B document that appeared on HRC's website and continues to appear on Huffington Post's website is a PDF document on which original, internal IRS markings and information have been obscured. By removing these obstructions, NOM was able to view the IRS markings and information that appear on the 2008 Schedule B.

21. Across the top of each page of NOM's 2008 Schedule B appears "THIS IS A COPY OF A LIVE RETURN FROM SMIPS. OFFICIAL USE ONLY" and stamped diagonally in the center of each page appears the number "100560209."

22. According to the Internal Revenue Manual, Section 3.11.12.1.26 (01-01-2012), the language "THIS IS A COPY OF A LIVE RETURN FROM SMIPS" is the header that the IRS's Central Information System inserts on documents that are electronically filed with the IRS.

23. These IRS official markings that appear on the 2008 Schedule B published by Huffington Post and HRC were added by the IRS after it was filed by NOM, thus confirming that the 2008 Schedule B was disclosed *after* NOM had filed it with the IRS.

24. Attached to this Complaint as Exhibit A is a true and correct copy of only the first page of NOM's 2008 Schedule B that was posted on the website of HRC. To permit comparison, Exhibit A includes the version of the 2008 Schedule B with the internal IRS markings obscured and the version with the obstructions removed, which reveals the internal IRS markings.

25. The only persons legally authorized to request or permit another person to request copies of NOM's 2008 Schedule B from the IRS are NOM's officers. *See* 26 U.S.C. § 6103(e)(1)(D)(ii). Limited exceptions for disclosures to certain government officials also exist, subject to strict conditions, including non-disclosure.

26.     No former or current NOM officer has ever requested or permitted another person to request a copy of any of NOM's tax returns from the IRS. (Affidavits of Brian S. Brown, John C. Eastman, Margaret Gallagher, Robert George, and Neil Corkery, attached as Exhibit B.)

27.     No former or current NOM officer has ever been in possession of the 2008 Schedule B that was filed with the IRS and appeared on the websites of HRC and the Huffington Post. (*Id.*)

28.     Prior to its unauthorized release to HRC, the 2008 Schedule B that was filed with the IRS was under the exclusive custody and control of the IRS.

29.     Numerous other news entities have republished the Confidential Return Information, including New York Magazine, Mother Jones, and The Daily Beast. This mass publication has led to further dissemination of NOM's Confidential Return Information through countless blogs and social media websites.

30.     The disclosure and mass publication has led to other harms against NOM and its donors, including lost contributions and the incurrence of legal fees.

31.     In the wake of Proposition 8, and the wide-spread harassment of donors who supported traditional marriage during the campaign to protect marriage in California, more than one NOM donor advised NOM that the donor would only contribute to NOM if the contributions were not publicly disclosed, for fear of the harassment the donor would receive. (Second Declaration of Brian Brown ¶ 3, attached as Exhibit C.)

32.     One such donor, who specifically contributed to NOM over several years, contributed on the specific condition of anonymity. (*Id.* ¶ 4.)

33.     After the IRS illegally released NOM's confidential Schedule B with the names and addresses of donors to NOM's fiercest political enemies, who then published and

6

disseminated it, and continue to do so, more than one of NOM's previous donors stopped

financially supporting NOM. NOM is also aware of other prospective donors that have stepped

back from considering making contributions to NOM. (*Id.* ¶ 5.)

34.   NOM's lost contributions exceed $50,000. (*Id.* ¶ 6.)

35.   On May 15, 2012, Fred Karger, a self-proclaimed opponent of NOM, filed a

complaint against NOM with the State of California's Fair Political Practices Commission (the

"FPPC"), alleging that NOM had violated various state election laws during the year 2008. The

allegations made by Mr. Karger were based solely on confidential tax return and donor

information Mr. Karger admittedly gleaned from the dissemination and subsequent publication

of the Confidential Return Information, which Mr. Karger published as an exhibit to his

complaint. NOM has been forced to incur legal fees responding to Mr. Karger's baseless

accusations and removing NOM's confidential tax return information from FPPC records.

36.   To date, NOM estimates that it has incurred in excess of $10,500 in legal fees and

costs as a result of the complaint filed by Mr. Karger with the FPPC. As the FPPC's

investigation has not yet been terminated, NOM likely will face additional costs associated with

Mr. Karger's complaint.

37.   The publication of the Confidential Return Information is a violation of federal

law. Pursuant to 26 U.S.C. § 7213(a)(3), it is "a felony, punishable by a fine in any amount not

exceeding $ 5,000, or imprisonment of not more than 5 years, or both, together with the costs of

prosecution" for "any person to whom any return or return information (as defined in section

6103(b)) is disclosed in a manner unauthorized by [Title 26] thereafter willfully to print or

publish in any manner not provided by law any such return or return information."

7

38.     Title 26, U.S.C. § 7431(e) requires the Secretary of the Treasury to notify a taxpayer if any person is criminally charged with inspection or disclosure of a taxpayer's return information in violation of 26 U.S.C. § 6103. NOM has been provided no such notice, so therefore alleges on information and belief that no IRS employee has been charged.

39.     To the best of NOM's knowledge, HRC has not been investigated or prosecuted for publishing the Confidential Return Information in violation of federal law.

40.     To the best of NOM's knowledge, the Huffington Post has not been investigated or prosecuted for publishing the Confidential Return Information in violation of federal law.

41.     On May 17, 2013, at a hearing of the Committee on Ways and Means, then-Acting Commissioner of the IRS Steven T. Miller was asked whether he was ever made aware of the publication of NOM's confidential 2008 donor list and if he was ever made aware of the IRS leak of confidential applications for the tax-exempt status of conservative groups to ProPublica. *IRS Targeting of Applications for Tax-Exempt Status Before the H. Comm. On Ways and Means*, 113th Cong. (2013), *available at* http://www.c-span.org/Events/Congress-Begins-Investigation-into-IRS-Targeting-Conservative-Organizations-for-Extra-Scrutiny/10737439699-2/ (questions of Dave Camp, Chairman, at 29:20 and 30:01 in video) (hereinafter, "Ways and Means Hearing").

42.     In response to those questions, Commissioner Miller testified that he believed that the Treasury Inspector General for Tax Administration ("TIGTA") "found that those disclosures were inadvertent and there's been discipline in one of those cases for somebody not following procedures." Ways and Means Hearing at 31:10.

43.     At the same May 17, 2013 hearing of the Committee on Ways and Means, Inspector General for Tax Administration J. Russell George was asked if he was ever made

8

aware of the alleged publication of NOM's confidential 2008 donor list. Ways and Means Hearing at 34:10.

44.     Inspector George testified that TIGTA had conducted a "review" of the disclosure of NOM's confidential 2008 donor list and that the review was "not ongoing." Ways and Means Hearing at 34:55–35:10.

**NOM's Exhaustive Efforts to Determine the Source of the Confidential Return Information Disclosure**

45.     NOM has undertaken significant and costly efforts to determine which agents or employees within the IRS are responsible for the unauthorized inspection and disclosure of the Confidential Return Information.

46.     In a letter dated April 11, 2012, NOM notified TIGTA of the illegal release of its Confidential Return Information, provided to TIGTA the proof of the disclosure of NOM's 2008 Schedule B by the IRS, and demanded an investigation into the source of the unlawful disclosure.

47.     In a letter dated April 20, 2012, TIGTA confirmed receipt of NOM's April 11, 2012 letter and provided complaint number 63-1204-0051-C for the matter.

48.     On April 16, 2012, NOM Chairman John Eastman conducted a telephone interview with a TIGTA investigator regarding the incident and the investigation.

49.     On April 27, 2012, NOM President Brian Brown and NOM's legal counsel met with TIGTA investigators and provided information about the unauthorized disclosure of the Confidential Return Information.

50.     In May 2012, Senator Orrin Hatch, Ranking Member of the Senate Finance Committee, wrote to then-Commission of the IRS Douglas H. Shulman, requesting that the IRS investigate the unauthorized disclosure of the Confidential Return Information. Lewis, *Sen.*

*Hatch Demands IRS Investigate Alleged NOM Donor Leak*, May 8, 2012,

http://dailycaller.com/2012/05/08/orrin-hatch-asks-irs-to-investigate-alleged-nom-donor-leak/.

51.     In response to these requests, TIGTA apparently conducted an investigation into the unauthorized disclosure of the Confidential Return Information.

52.     Neither TIGTA nor the IRS has revealed to NOM the results or conclusions of the investigation(s), nor any details or information concerning the illegal disclosure by the IRS of NOM's Confidential Return Information.

53.     NOM and NOM officers Brian Brown and John C. Eastman have submitted three (3) Freedom of Information Act ("FOIA") requests to the IRS; two (2) FOIA requests to TIGTA; and one (1) Privacy Act request to TIGTA, seeking the results of TIGTA's investigation and to obtain other information about the source of the unauthorized disclosure of the Confidential Return Information.

54.     In response to NOM's first two FOIA requests, the IRS has repeatedly refused to produce responsive records related to TIGTA's investigation, but referred all of them to TIGTA.

55.     In response to NOM's first two FOIA requests, TIGTA has consistently withheld completely or redacted all materially relevant information with respect to its investigation of the illegal disclosure of the Confidential Return Information.

56.     On May 9, 2013, NOM submitted a third FOIA request to the IRS seeking to corroborate that no former or current NOM officer has ever requested or permitted another person to request a copy of any of NOM's tax returns from the IRS. *See supra*, ¶ 26. On May 31, 2013, the IRS acknowledged receipt of this FOIA request and granted expedited processing, yet in a letter dated June 10, 2013, the IRS stated that it needed more than nine additional weeks or until August 16, 2013, to respond.

57.     On August 6, 2013, the IRS responded to this request, confirming that the IRS has no records from any person, including any NOM representative, requesting copies of NOM's tax returns or return information. (Exhibit D.)

58.     NOM timely filed administrative appeals of all FOIA requests for which responsive documents were withheld, but these appeals were either denied in whole or resulted in the production of records and information irrelevant to the results of TIGTA's investigation or the unauthorized inspection and disclosure of the Confidential Return Information.

59.     The Privacy Act, 5 U.S.C. § 552a *et seq.*, permits TIGTA to exempt from the provisions of the Privacy Act any record maintained by TIGTA if disclosure is made for certain "routine uses," 5 U.S.C. § 552a(b)(3), as defined and published by TIGTA in the Federal Register, 5 U.S.C. § 552a(e)(4)(D). Under this authority, TIGTA has defined and published as a "routine use" of the TIGTA Files system of records:

> (12) Disclos[ure of] information to complainants, victims, or their representatives (defined for purposes here to be a complainant's or victim's legal counsel or a Senator or Representative whose assistance the complainant or victim has solicited) concerning the status and/or results of the investigation or case arising from the matters of which they complained and/or of which they were a victim, including, once the investigative subject has exhausted all reasonable appeals, any action taken. Information concerning the status of the investigation or case is limited strictly to whether the investigation or case is open or closed. Information concerning the results of the investigation or case is limited strictly to whether the allegations made in the complaint were substantiated or were not substantiated and, if the subject has exhausted all reasonable appeals, any action taken.

75 Fed. Reg. 20715-16 (April 20, 2010) (hereafter, the "Routine Use").

60.     On April 15, 2013, pursuant to the Routine Use, NOM President Brian Brown and NOM Chairman John C. Eastman submitted a Privacy Act request to TIGTA, which made the following three (3) requests for information and records:

> 1.   Whether the investigation of Complaint No. 63-1204-0051-C is open or closed.

2. Whether the allegations made in Complaint No. 63-1204-0051-C, including the allegations made in the April 11, 2012 letter from the Requestors to TIGTA . . . were substantiated or were not substantiated.

3. If the subject(s) of Complaint No. 63-1204-0051-C has/have exhausted all reasonable appeals, any action taken by TIGTA, or any other agency, as a result of Complaint No. 63-1204-0051-C.

61.     Notwithstanding the disclosures explicitly permitted by the Routine Use, in a letter dated May 3, 2013, TIGTA claimed that it could not provide any of the requested information, stating:

> You have requested that TIGTA disclose this information pursuant to a routine use in TIGTA's System of Records Notice under the Privacy Act. However, in addition to the Privacy Act, the release of TIGTA Title 26 (I.R.C.) investigative records, if any, is also governed by the confidentiality provisions of I.R.C. § 6103. Specially, records compiled pursuant to a Title 26 investigation, including even the fact of an investigation, are the protected return information of the subject(s) of the investigation. Your complaint (#63-1204-0051-C) concerned allegations of an unauthorized disclosure of return information by a third party, which is an allegation of a potential violation of I.R.C. § 7213. Therefore, pursuant to I.R.C. § 6103, TIGTA can neither admit nor deny the existence of any records responsive to your current request.

62.     Through these requests, NOM sought its own return information, including the results of TIGTA's investigation of the illegal release by the IRS of NOM's Confidential Return Information. Despite the fact that such results constitute NOM's, not another taxpayer's, return information, and NOM is entitled to receive its own return information, TIGTA and the IRS have refused to furnish the information.

63.     According to TIGTA, 26 U.S.C. § 6103 prohibits it from disclosing to NOM any information concerning its investigation, or even disclosing the existence of such investigation regarding the unlawful release to third parties of NOM's Confidential Return Information.

64.     As a result of TIGTA's interpretation of 26 U.S.C. § 6103, NOM is unable to learn how NOM's Confidential Return Information was unlawfully released to third parties

and/or which IRS agents or employees are responsible for the disclosure of NOM's Confidential

Return Information, the date(s) on which the disclosure occurred, or the circumstances

surrounding the disclosure.

65.     On May 24, 2013, Brown and Eastman filed an administrative appeal of the

denial of their Privacy Act request.

66.     On June 25, 2013, TIGTA denied Brown and Eastman's appeal, stating

> After a careful review of your request, we uphold the prior response by the Disclosure Branch at the request level which indicated that TIGTA can neither admit nor deny the existence of any records responsive to your request . . . . Information concerning potential non-tax Title 26 violations . . . constitutes the return information of the person(s) being investigated.

67.     Despite their insistence that federal law prohibits them from even acknowledging

the existence of the TIGTA investigation, TIGTA and the IRS have publicly disclosed in

hearings before the Congress information confirming TIGTA's investigation of the unlawful

release to third parties of NOM's Confidential Return Information. *See supra*, ¶¶ 41–44.

68.     Prompted by the testimony of Commissioner Miller at the May 17, 2013 hearing

of the Committee on Ways and Means, the organization ProPublica sent an inquiry to the IRS

asking for further information about the disclosures referenced by then-Commissioner Miller.

Elliot and Barker, *IRS Office That Targeted Tea Party Also Disclosed Confidential Docs From*

*Conservative Groups*, May 13, 2012, http://www.propublica.org/article/irs-office-that-targeted-

tea-party-also-disclosed-confidential-docs.

69.     In response to that inquiry, the IRS sent the following information to ProPublica:

> When these two issues were previously raised concerning the potential unauthorized disclosures of 501(c)(4) application information, we immediately referred these cases to TIGTA for a comprehensive review. In both instances, TIGTA found these instances to be inadvertent and unintentional disclosures by the employees involved.

Case 1:13-cv-01225-JCC-IDD Document 1 Filed 10/03/13 Page 14 of 25 PageID# 14

*Id.*

70.     TIGTA and the IRS have deliberately denied NOM access to *any* information
concerning the investigation of the disclosure of the Confidential Return Information, but have
provided such information to third parties other than NOM.

71.     The unauthorized inspection and disclosure of the Confidential Return
Information is a violation of federal law, 26 U.S.C. § 6103, for which the IRC imposes criminal
penalties, 26 U.S.C. § 7213, and civil penalties, 26 U.S.C. § 7431.

**A Pattern of Unscrupulous Behavior Toward Philosophically Conservative Organizations**

72.     One or more IRS employees illegally disclosed the Confidential Return
Information to the NOM's ideological opponent, HRC, and to one or more HRC employees,
agents or volunteers.

73.     HRC advocates nationwide for redefining "marriage" to include same-sex
couples. *See* HRC, Marriage Center, http://www.hrc.org/marriage-center (last visited September
27, 2013). Its mission is directly opposed to NOM's mission.

74.     Since April 2009, HRC has conducted a "campaign-style operation" called "NOM
Exposed," which "tracks and challenges" NOM, its donors, and its members. *See* HRC, NOM
Exposed, http://www.hrc.org/nomexposed (last visited September 27, 2013).

75.     HRC has continuously surveilled and reported on NOM's finances and
erroneously claims that NOM "hides its donors." *See e.g., The Facts*, NOM Exposed, HRC,
http://www.hrc.org/nomexposed/section/the-facts (last visited September 27, 2013). For
example, HRC has published on its website the publicly-available portions of NOM's IRS Form
990s. The Mysterious Five Donors, NOM Exposed, HRC, http://hrc.org/nomexposed/section
/the-mysterious-5-donors (last visited September 27, 2013). In January 2011, HRC employees

14

entered NOM's Washington, D.C. offices and filmed themselves demanding copies of NOM's IRS Form 990. *Id.* And two months prior to posting the Confidential Return Information on its website, HRC publicly attacked NOM, accusing it of "evading Minnesota public disclosure laws" and urged the Minnesota Campaign Finance and Disclosure Board to investigate NOM. Kevin Nix, *HRC Calls on Minnesota Election Board to Investigate NOM's Financial Activity*, Feb. 1, 2012, http://www.hrc.org/blog/entry/hrc-calls-on-minnesota-election-board-to-investigate-noms-financial-activit.

76.     At the time HRC published the Confidential Return Information, Joe Solmonese was the President of HRC.

77.     On March 31, 2012—one day after HRC published the Confidential Return Information —Solmonese stepped down as President of HRC to become a national co-chairman of President Barack Obama's re-election campaign.

78.     The Confidential Return Information disclosed by the IRS to third parties, including HRC, was published by HRC during President Barack Obama's re-election campaign.

79.     As is stated above, NOM serves as a national resource for marriage-related initiatives at the state and local level. The Confidential Return Information disclosed by the IRS to third parties, including HRC, was from 2008, the year that Proposition 8, the marriage amendment, was on the ballot in California. According to the Heritage Foundation,

> Supporters of Proposition 8 in California have been subjected to harassment, intimidation, vandalism, racial scapegoating, blacklisting, loss of employment, economic hardships, angry protests, violence, at least one death threat, and gross expressions of anti-religious bigotry. Arguments for same-sex marriage are based fundamentally on the idea that limiting marriage to the union of husband and wife is a form of bigotry, irrational prejudice, and even hatred against homosexual persons. As this ideology seeps into the culture more generally, individuals and institutions that support marriage as the union of husband and wife risk paying a price for that belief in many legal, social, economic, and cultural contexts.

Thomas M. Messner, Abstract to *The Price of Prop 8*, Heritage Foundation Backgrounder, No. 2328 (Oct. 22, 2009), available at www.heritage.org/research/family/ bg2328.cfm.

80.     HRC has also publicly accused one NOM donor of "funding NOM's strategy of using racial division and unfounded scare tactics to attack LGBT equality."

81.     The disclosure of the Confidential Return Information is part of a larger pattern of behavior aimed at harassing, burdening, and retaliating against organizations and their donors based upon the viewpoints and philosophical policy positions expressed by these organizations.

82.     Besides the leak of the Confidential Return Information, the IRS has recently disclosed the confidential tax information of multiple conservative and Republican non-profit organizations.

83.     On August 24, 2012, the IRS gave the confidential donor list of Texas Public Policy Foundation ("TPPF"), a 501(c)(3) organization seeking to "promote and defend liberty, personal responsibility, and free enterprise in Texas and the nation" to GuideStar.org, a nonprofit organization that collects and distributes information about other nonprofits. GuideStar published the list and, although it removed it shortly thereafter, the list was republished by others and continues to be publicly-available today. On August 5, 2013, TPPF joined an existing law suit, seeking damages for the unauthorized disclosure pursuant to 28 U.S.C. § 7431. *NorCal Tea Party Patriots, et al. v. IRS, et al.*, No. 1:13-cv-00341 (S.D. Ohio, August 5, 2013).

84.     In April 2013, the IRS unlawfully disclosed a portion of the Schedule B of the Republican Governor's Association Public Policy Committee. That Schedule B, along with a list of major donors, was published on the Internet by the Center for Public Integrity. *IRS 'outs'*

16

*Handful of Donors to Republican Group*, Center for Public Integrity, April 4, 2013,

http://www.publicintegrity.org/2013/04/04/12426/irs-outs-handful-donors-republican-group.

85.     Around December 2012, the IRS disclosed the applications for tax-exempt status

of 31 conservative groups to the organization ProPublica. Nine of those applications had not yet

been approved and therefore were confidential under federal law. ProPublica published six of the

unapproved applications on its website. Barker and Elliot, *IRS Office That Targeted Tea Party*

*Also Disclosed Confidential Docs From Conservative Groups*, ProPublica, May 13, 2013,

http://www.propublica.org/article/irs-office-that-targeted-tea-party-also-disclosed-confidential-

docs. On August 8, 2013, one such organization filed suit seeking damages for the unauthorized

disclosure pursuant to 28 U.S.C. § 7431. *Citizen Awareness Project, Inc. v. IRS, et al*, No. 13-cv-

02127 (D. Colo., August 8, 2013).

86.     In July 2013, TIGTA revealed in a letter to Senator Chuck Grassley (R-IA) that

on four occasions since 2006, government officials engaged in "unauthorized access or

disclosure of tax records of political donors or candidates," including one case described as

"willful unauthorized access." Caroline May, *"Willful unauthorized access": Gov't Officials*

*Raided Tax Records of Political Candidates, Donors; DOJ Declined to Prosecute*, July 16, 2013,

http://dailycaller.com/2013/07/16/willful-unauthorized-access-govt-officials-raided-tax-records-

of-political-candidates-donors-doj-declined-to-prosecute/. TIGTA also revealed that it had

referred one case to the Department of Justice, but the Department of Justice declined to

prosecute the case. *Id.*

87.     In addition to these recurring illegal disclosures and inspections, the IRS recently

acknowledged that since 2010, it has been systematically targeting applicants for tax-exempt

status for additional review and heightened scrutiny based on their perceived conservative

affiliations, as well as their philosophical and political policy positions.

88.     On or around May 14, 2013, the Treasury Inspector General for Tax

Administration issued a report entitled "Inappropriate Criteria Were Used to Identify Tax-

Exempt Applications for Review" (hereafter "TIGTA Report"). TIGTA, *Inappropriate Criteria

Were Used to Identify Tax-Exempt Applications for Review*, May 14, 2013, *available at*

http://www.treasury.gov/tigta/auditreports/2013reports/201310053fr.pdf.

89.     The TIGTA Report concluded:

> The IRS used inappropriate criteria that identified for review Tea Party and other
> organizations applying for tax-exempt status based upon their names or policy
> positions instead of indications of potential political campaign intervention.
> Ineffective management: 1) allowed inappropriate criteria to be developed and
> stay in place for more than 18 months, 2) resulted in substantial delays in
> processing certain applications, and 3) allowed unnecessary information requests
> to be issued.

*Id.* at Highlights.

90.     The IRS's targeting of conservative applicants for tax-exempt status is currently

the subject of four different congressional investigations, which have included multiple and

ongoing hearings before congressional committees and interviews with IRS employees.

91.     The IRC provides for punitive damages "in the case of a willful inspection or

disclosure or an inspection or disclosure which is the result of gross negligence." 26 U.S.C. §

7431(c)(1)(B)(ii).

92.     These examples of similar IRS misconduct towards other groups perceived as

being aligned with conservative policy positions indicate that the disclosure of NOM's

Confidential Return Information was made willfully, or at minimum, as a result of gross

negligence.

## Claims for Relief

### COUNT I

**Violation of 26 U.S.C. § 6103 – Willful or Grossly Negligent Unauthorized Disclosure**

93.    Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

94.    Title 26, U.S.C. § 6103 provides that tax "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States employees and other defined persons except as authorized by this provision.

95.    Title 26, U.S.C. § 7431 provides taxpayers a cause of action for damages against the United States for knowing or negligent unauthorized inspection or disclosure of tax return information in violation of 26 U.S.C. § 6103.

96.    "Return" is defined as

> any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

26 U.S.C. § 6103(b)(1).

97.    "Return information" is defined very broadly to include

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

> (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section

19

6110(b) [*IRC Sec. 6110(b)*]) which is not open to public inspection under section 6110 [*IRC Sec. 6110*][.]

26 U.S.C. § 6103(b)(2)(A)-(B).

98.    NOM's 2008 Schedule B is the "return" of NOM pursuant to 26 U.S.C. § 6103(b)(1).

99.    NOM's 2008 Schedule B is made confidential and exempt from disclosure by 26 U.S.C. § 6103.

100.    Although certain returns and return information are open to public inspection, Congress specifically stated that the IRS is not authorized to publicly disclose the "name or address of any contributor to any organization or trust . . . which is required to furnish such information." 26 U.S.C. § 6104(b).

101.    The IRC defines "disclosure" to mean "the making known to any person in any manner whatever a return or return information." 26 U.S.C. § 6103(b)(8).

102.    As described above, one or more IRS employees disclosed the Confidential Return Information to HRC and one or more employees, agents or volunteers of HRC. Such disclosure was intentional, grossly negligent, or negligent.

103.    On information and belief, the IRS employee or employees chose to disclose the Confidential Return Information to HRC with the intent that HRC would widely publish the information through its website, media releases, and through other means.

104.    To date, the United States has refused NOM's requests for information as to the circumstances of the disclosure of the Confidential Return Information. Agents of the United States have admitted, however, that such disclosure was made by IRS employees. Ways and Means Hearing at 31:10.

105.    Such disclosure was not authorized by 26 U.S.C. § 6103.

20

106.    Such disclosure did not result from a "good faith, but erroneous interpretation of section 6103." 26 U.S.C. § 7431(b)(1).

107.    Such disclosure was not requested by NOM. 26 U.S.C. § 7431(b)(2).

108.    Such disclosure therefore violates 26 U.S.C. § 6103.

109.    Donors to 501(c)(4) organizations rely on the IRC's prohibition of disclosure of information to protect their confidentiality and their right to the freedom of association. Potential donors to NOM now know that they will not have the protection of those provisions of law. They know that employees of the IRS intentionally and illegally disclosed the Confidential Return Information and that the IRS is protecting the identity of those employees and that the Department of Justice is taking no action to prosecute the violation of law.

## COUNT II

### Violation of 26 U.S.C. § 6103 – Willful or Grossly Negligent Unauthorized Inspection

110.    The Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

111.    The IRC defines "inspection" and "inspected" to mean "any examination of a return or return information." 26 U.S.C. § 6103(b)(7).

112.    As described above, in the process of illegally disclosing the Confidential Return Information, one or more IRS employees inspected NOM's Confidential Return Information.

113.    Such inspections were intentional, grossly negligent, or negligent.

114.    Such inspections were not authorized by 26 U.S.C. § 6103.

115.    Such inspections did not result from a "good faith, but erroneous interpretation of section 6103." 26 U.S.C. § 7431(b)(1).

116.    Such inspections were not requested by NOM. 26 U.S.C. § 7431(b)(2).

117.    Such inspections therefore violate 26 U.S.C. § 6103.

## Damages

118.    Pursuant to 26 U.S.C. § 7431, NOM is entitled to the sum of actual and punitive damages or statutory damages in the amount of $1,000 per each act of unauthorized inspection and $1000 per each act of unauthorized disclosure, whichever is greater.

119.    The IRC provides for punitive damages "in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence." 26 U.S.C. § 7431(c)(1)(B)(ii).

120.    As described above, one or more IRS employees willfully, or as a result of gross negligence, disclosed and inspected the Confidential Return Information in violation of 26 U.S.C. § 6103.

121.    Due to TIGTA's and the IRS's refusals to provide any relevant information to NOM concerning TIGTA's investigation, the number of unauthorized inspections and disclosures of the Confidential Return Information cannot be completely and accurately ascertained at this time, but will be more fully known after the completion of discovery. At minimum, Defendant United States of America is liable for $1,000 for each unauthorized disclosure to each recipient of the disclosure and $1,000 for each inspection by employees of the United States.

122.    Because some or all of these disclosures and inspections were made willfully or as a result of gross negligence, Defendant United States of America is liable to NOM for punitive damages. 26 U.S.C. § 7431(c)(1)(B)(ii).

123.    As described above, ¶¶ 30-36, NOM has also suffered actual damages as a result of the actions of one or more IRS employees.

22

124.    NOM has calculated that it has lost in excess of $50,000 in contributions as a result of the illegal disclosure of its Confidential Return Information.

125.    NOM has calculated that it has incurred in excess of $10,500 in legal fees and costs as a result of the illegal disclosure of its Confidential Return Information.

126.    WHEREFORE, the Plaintiff prays for the relief set forth below.

## Prayer for Relief

Plaintiff respectfully requests the following relief:

127.    The Court's order that the IRS disclose to NOM the results of any and all IRS and/or TIGTA investigation(s) into the person(s) responsible for the release of NOM's Confidential Return Information, the circumstances and date(s) of such unlawful actions, together with the report(s) of the disciplinary action(s) taken by the IRS regarding the violation of Code Section 6103 by the IRS and its agents and employees;

128.    Permanently enjoin the IRS and its agents and employees from further release to any third party of Plaintiff NOM's Confidential Return Information;

129.    Award Plaintiff NOM $1,000 in damages for each unauthorized disclosure of its return, including intentional subsequent disclosures;

130.    Award Plaintiff NOM $1,000 in damages for each unauthorized disclosure of its return information, including intentional subsequent disclosures;

131.    Award Plaintiff NOM $1,000 in damages for each unauthorized inspection of its return;

132.    Award Plaintiff NOM $1,000 in damages for each unauthorized inspection of its return information;

23

133.    Award Plaintiff NOM actual damages according to proof incurred as a result of

the illegal disclosures and inspections of Plaintiff NOM's return and return information;

134.    Award Plaintiff NOM punitive damages for willful and grossly negligent

disclosures and inspections of NOM's return and return information;

135.    Award Plaintiff NOM costs and reasonable attorney fees; and

136.    Award such other relief as the Court deems just.

**PLAINTIFF HEREBY DEMANDS A JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 3rd day of October, 2013.

Cleta Mitchell, of counsel
(D.C. 433386)*
William E. Davis, of counsel
(D.C. 280057)*
Mathew D. Gutierrez, of counsel
(Fla. 0094014)*
Kaylan L. Phillips (Ind. 30405-84)*
Noel H. Johnson (Wisc. 1068004)*
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
cmitchell@foley.com
wdavis@foley.com
mgutierrez@foley.com
kphillips@actrightlegal.org
njohnson@actrightlegal.org
*Counsel for Plaintiff*

Jason Torchinsky (Va. 47481)
Shawn Sheehy (Va. 82630)
Holtzman, Vogel, Josefiak, PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
(540) 341-8808 (telephone)
(540) 341-8809 (fax)
jtorchinsky@hvjlaw.com
ssheehy@hvjlaw.com
*Counsel for Plaintiff*

John C. Eastman (Cal. 193726)*
Anthony T. Caso (Cal. 88561)*
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu
caso@chapman.edu
*Counsel for Plaintiff*

* *Pro Hac Vice* Motions pending

## VERIFICATION OF COMPLAINT
### PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 2 7 , 2013

Brian S. Brown
President, National Organization for Marriage, Inc.