IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| THE NATIONAL ORGANIZATION FOR MARRIAGE, INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | 1:13cv1225 (JCC/IDD) |
| THE UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE, ) ) ) | |
| Defendant. ) | |

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on The National Organization for Marriage, Inc.'s ("NOM") Motion for Attorneys' Fees (the "Motion"). (Pl.'s Mot. [Dkt. 90].) For the reasons detailed below, the Court will deny the Motion in its entirety.

### **I. Background**

On June 3, 2014, the Court granted in part and denied in part the United States of America, Internal Revenue Service's (the "Government") Motion for Summary Judgment. [Dkt. 80] In the accompanying Memorandum Opinion, the Court detailed the factual background of this case. (Mem. Op. [Dkt. 79] at 1-6.) In short, NOM brought suit under 26 U.S.C. § 6103 and alleged that the Government improperly disclosed and inspected its confidential tax return information. (Compl. [Dkt. 1] at 1-2.) The Complaint alleged two counts: (1) willful or grossly

1

negligent unauthorized disclosure, and (2) willful or grossly negligent unauthorized inspection, both in violation of 26 U.S.C. § 6103. (Id. at 19-22.) NOM sought actual, statutory, and punitive damages. (Id. at 22-23.) The Government admitted to an inadvertent disclosure of an unredacted copy of NOM's 2008 Form 990 Schedule B, which listed personal information of donors who contributed $5,000 or more to NOM ("the 2008 Schedule B disclosure"), but denied NOM's allegations of a willful or grossly negligent disclosure and conspiracy. (Def.'s Answer [Dkt. 33] ¶ 78.) After the Court dismissed NOM's unlawful inspection claim and its request for punitive damages, the only issue that remained for trial was NOM's damages from the 2008 Schedule B disclosure. (Mem. Op. at 32.)

Approximately two weeks after the Court dismissed the majority of NOM's claims with prejudice, on June 18, 2014, the parties notified the Court of a proposed settlement. [Dkt. 86] On June 23, 2014, the Court entered the consent judgment, which ordered that NOM shall recover judgment against the Government in the amount of $50,000 inclusive of NOM's claims for actual damages and costs of the action, but that the Court shall retain jurisdiction so NOM could file a motion for attorneys' fees under 26 U.S.C. § 7431(c)(3). [Dkt. 87] Otherwise, the case was dismissed with prejudice. (Id.)

Having been fully briefed, NOM's Motion for Attorneys' Fees is ripe for disposition.

## II. Standard of Review

A taxpayer can recover reasonable attorneys' fees and costs arising from tax litigation brought against the United States under Title 26 of the United States Code if the taxpayer (1) exhausted all administrative remedies within the Internal Revenue Service and (2) was the "prevailing party" as defined in 26 U.S.C. §§ 7430(a)(2), (c)(1)(B)(iii).[1] <u>Kenlin Indus., Inc. v. United States</u>, 927 F.2d 782, 786 (4th Cir. 1991). To qualify as the "prevailing party," the Government's position must not have been substantially justified, and the fee-seeking party must have "substantially prevailed" as to either "the amount in controversy" or "the most significant issue or set of issues presented."[2] 26 U.S.C. §§ 7430(c)(4)(A)-(B). The Government has the burden of proving its position was substantially justified, while the fee-seeking party has the burden of proving it substantially prevailed as to the amount in controversy or as to the most significant issues presented. <u>Jensen v. Comm'r of</u>

---

[1] The Government does not contest that NOM exhausted its administrative remedies before filing suit.
[2] There is an additional requirement regarding the net worth of the taxpayer, and if it is an organization, the size of the taxpaying entity. <u>See</u> 26 U.S.C. § 7430(A)(ii) (citing 28 U.S.C. § 2412(d)(2)(B)). If the fee-seeking party is an organization, like NOM is here, the organization's net worth must be no more than $7,000,000, and the organization must have no more than 500 employees at the time the civil action was filed. The Government does not contest that NOM satisfies this requirement. (<u>See</u> Pl.'s Mem. [Dkt. 91] at 8; Def.'s Opp'n at 9-19.)

3

Internal Revenue, No. 13005-98, 2000 WL 1663373, at *3 (T.C. Nov. 6, 2000) (citations omitted).

"The requirements of section 7430 are conjunctive; therefore, failure to meet any one of the requirements will preclude an award of costs." Id. (citation omitted). Moreover, the Court strictly construes the fee-award statute in favor of the United States because "this statute 'renders the United States liable for attorney's fees for which it would not otherwise be liable, [which] amounts to a partial waiver of sovereign immunity . . . .'" Goettee v. Comm'r of Internal Revenue, 192 F. App'x 212, 222 (4th Cir. 2006) (quoting Ardestani v. INS, 502 U.S. 129, 137 (1991)); see also Kenlin Indus., 927 F.2d at 786 ("It should be noted at the outset that this is a suit for attorney's fees and costs against the Government in a tax refund case. As such, this case would be barred by the doctrine of sovereign immunity unless Congress has by statute expressly waived the doctrine for this type of case; if such waiver has been given, it must be strictly construed in favor of the Government.") (emphasis in original and citations omitted).

### III. Analysis

NOM contends it is entitled to an attorneys' fee award of $691,025.05 because first, it substantially prevailed both as to the amount in controversy and as to the most significant

4

issue or set of issues presented, and second, because the Government's position was not substantially justified. (Pl.'s Mem. at 4-13.) The Government opposes NOM's fee request and argues not only that its position was substantially justified, but also that NOM did not substantially prevail in either category. (Def.'s Opp'n at 9-19.) First, the Court finds that NOM did not substantially prevail as to the amount in controversy, nor did it substantially prevail as to the set of issues presented. Even though the Court's inquiry could end there, the Court also finds that the Government's position was substantially justified. Accordingly, NOM's Motion will be denied. The Court addresses each requirement in turn.

### A. Amount in Controversy

The parties arrive at widely disparate numbers for the total amount in controversy, but agree that NOM ultimately recovered $50,000 in actual damages and costs from the Government. (See [Dkt. 87].)

NOM claims the proper amount in controversy is $58,586.37. (Pl.'s Mem. at 7.) NOM's complaint originally requested $60,500 in actual damages, comprised of $10,500 in damages incurred from Fred Karger's complaint with the California Fair Political Practice Commission ("Karger Complaint") and $50,000 from lost donations. (Id.) However, NOM argues this amount was later reduced to $58,586.37, because

5

it voluntarily withdrew the $50,000 claim for lost donations, but increased the damages associated with the Karger Complaint to $12,500 and included an additional $46,086.37 in other legal fees and costs incurred as a result of the 2008 Schedule B disclosure. (Id.) By NOM's calculation, it substantially prevailed by recovering $50,000, or 85% of the $58,586.37 that it sought. (Id. at 7-8.)

Conversely, the Government claims that NOM sought a total of $117,586.37[3] in actual and statutory damages, plus an unspecified request for punitive damages, for which the Government seeks a multiplier. (Def.'s Mem. at 10-12.) By the Government's calculation, if the Court uses a "2:1 punitive damages to actual/statutory damages ratio," meaning $235,172.74 in punitive damages plus $117,586.37 in actual and statutory damages for a total of $352,759.11, then NOM only recovered 14%. (Def.'s Opp'n at 11.) If the Court uses a "1:1 punitive damages to actual/statutory damages ratio, meaning $117,586.37 in punitive damages and $117,586.37 in actual and statutory damages for a total of $235,172.74, then NOM still only recovered 21%." (Id.) And even if the Court does not incorporate punitive

---

[3] The Government calculates the amount in controversy as follows: $108,086.37 in actual damages (comprised of $12,500 associated with the Karger Complaint; $50,000 associated in lost donations; and $46,086.37 in additional fees and costs), plus $9,000 in statutory damages (pursuant to 26 U.S.C. § 7431: $1,000 for the single disclosure, plus $8,000 for eight alleged post-disclosure unauthorized inspections), for a total of $117,586.37. (Def.'s Opp'n at 10.)

6

damages into the amount in controversy calculation at all, the $50,000 recovery is still only 43% of $117,586.37. (Id.)

With such divergent calculations from the parties, the Court must calculate the total amount in controversy before it can determine whether NOM substantially prevailed. To do so, the Court must first determine the actual damages at issue, and second, the additional amount of punitive damages, if any.

"The amount in controversy is any amount placed at issue by the pleadings increased by any amount subsequently placed at issue by any party." Don Johnson Motors, Inc. v. United States, No. CIV.A. B-06-047, 2008 WL 2200263, at *3 (S.D. Tex. Mar. 14, 2008) (citing Dixon Int'l Serv. Corp. v. Comm'r Internal Revenue, Nos. 22829-88, 22832-88, 1990 WL 64041 (T.C. May 17, 1990); Treas. Reg. § 301.7430(d) (1997)), aff'd, 453 F. App'x 526, 528 (5th Cir. Dec. 15, 2011). Without additional guidance from the Fourth Circuit, the Court adopts this instructive definition of "amount in controversy." This broad definition necessarily includes actual damages, statutory damages, and punitive damages that are sought both in the complaint, i.e., "placed at issue by the pleadings," and those damages subsequently sought in later stages of the litigation. Even though "[a]ctual damages for the invasion of privacy that occurs when tax returns are wrongfully disclosed can be hard to quantify," the record in this case is actually quite clear.

7

<u>Scrimgeour v. Internal Revenue</u>, 149 F.3d 318, 327 n.11 (4th Cir. 1998) (citation omitted).

First, in strictly construing the fee-award statute in the Government's favor, the compensatory damages[4] at issue in this litigation is $117,586.37, which includes both actual and statutory damages. This amount reflects "any amount placed at issue by the pleadings increased by any amount subsequently placed at issue by any party." <u>Don Johnson Motors, Inc.</u>, 2008 WL 2200263, at *3. Specifically, this amount is the sum of the following amounts placed at issue by NOM:

> $50,000 – Lost donations. (Compl. ¶ 124; later "withdrawn" by NOM on Feb. 12, 2014 in its Supplemental Response to Def.'s First Set of Discovery Requests ("Suppl. Response") [Dkt. 68-3] at 2 ("Due to the possibility that Plaintiff would have to reveal the identity of donors . . . . Plaintiff has decided to withdraw that portion of its claim for damages.").)
>
> $12,500 – Karger Complaint. (Compl. ¶ 125 ("$10,500"), but increased to $12,500 in NOM's Suppl. Response at 2.)
>
> $46,086.37 – Additional Costs and Fees. (NOM's Suppl. Response at 2 ("Costs and reasonable attorneys' fees from the unauthorized disclosure.").)
>
> $1,000 – Statutory Damages for Single

---

[4] "The damages under § 7431 are compensatory in nature, designed to compensate the plaintiff for an invasion of privacy." <u>Scrimgeour</u>, 149 F.3d at 327 n.11.

8

>Disclosure under 26 U.S.C. § 7431
>(Compl. ¶¶ 129, 130.)
>
>$8,000 – Statutory Damages for eight alleged
>unauthorized inspections. (Compl.
>¶¶ 131, 132; Mem. Op. at 19.)

NOM argues that the $50,000 claim for lost donations should not be included because the Government was not obligated to defend that claim when it was "withdrawn" prior to the motion for summary judgment. (Pl.'s Reply at 2.) This argument is not persuasive. The Government had to defend against this $50,000 claim since the inception of the litigation, until it was "withdrawn" over five months later. The Court includes any amount at issue at any point in the litigation, including the $50,000 claim sought in NOM's complaint. Don Johnson Motors, Inc., 2008 WL 2200263, at *3.

Second, the total amount in controversy must account for the punitive damages sought by NOM throughout this litigation, which was ultimately dismissed by the Court on summary judgment. In its answer, the Government admitted to a single, inadvertent disclosure, but was nonetheless required to defend against NOM's heightened claims of willful and grossly negligent conduct for eight months until the Court dismissed those claims on June 3, 2014. While precedent appears to be limited on this issue, as the Government noted, at least one appellate court affirmed the use of a "2:1 ratio" multiplier by

a district court awarding punitive damages to punish a willful and grossly negligent unauthorized disclosure of taxpayer return information. See Snider v. United States, 468 F.3d 500 (8th Cir. 2006) (limiting the punitive damage award multiplier to actual damages, because punitive damages were not available as to statutory damages under 26 U.S.C. § 7431(c)(1)). In Snider, the Eighth Circuit affirmed the district court's punitive damage award of $19,589.26, which was twice the actual damage award of $9,794.63. Id. at 510 (vacating, however, the additional $8,000 award of punitive damages based on the $4,000 statutory damage award).

Here, NOM sought $108,586.37 in actual damages, which is $117,586.47 in total compensatory damages less $9,000 in statutory damages. NOM argues that punitive damages should not be factored into the amount in controversy, mainly because any punitive damage amount would be "speculative," as NOM "never reduced [the punitive damage claim] to a dollar amount." (Pl.'s Mem. at 7.) Even though NOM never quantified the amount of punitive damages it sought, the Government was required to defend against this claim all the way through the disposition of summary judgment. Indeed, as discussed in more detail in the subsequent section, the issue in this case was whether the Government acted willfully or was grossly negligent in disclosing NOM's tax return information, which if proven, would

10

justify a punitive damage award. And when strictly construing the fee-award statute in the Government's favor as the Court is required to do, inclusion of an amount for punitive damages is necessary. Goettee, 192 F. App'x at 222. Accordingly, due to the substantial amount NOM sought in compensatory or actual damages, the Court finds an equal amount, but not a multiplier, of punitive damages is appropriate. Therefore, the total amount in controversy is $217,172.74, or $108,586.37 in actual damages, and $108,586.37 in punitive damages.

When the Court compares the amount in controversy of $217,172.74 with the ultimate recovery of $50,000, it cannot find that NOM substantially prevailed. NOM only recovered approximately 23% of what it originally sought. Because this recovery is disproportionately low as compared to the original amount sought, NOM did not substantially prevail as to the amount in controversy. Mallas v. United States, 876 F. Supp. 86, 89 (M.D.N.C. 1994) ("[M]any courts view a disproportionally low award as a measure of lack of success.") (citing Farrar v. Hobby, 506 U.S. 103, 120-21 (1992) (O'Connor, J., concurring) (discussing several cases where damages awarded were only a fraction of those sought)).

### B. Issues Presented

Likewise, NOM did not substantially prevail on the issues presented in this litigation. NOM argues "the primary

11

and most significant issue in this case was whether the IRS unlawfully disclosed NOM's 2008 IRS Form 990, Schedule B," and if so, whether such disclosure was the cause of its actual damages. (Pl.'s Mem. at 5.) The Government offers a broader interpretation of the case, arguing that NOM filed this lawsuit to prevent the Government's "deliberate attempt to chill the First Amendment activity of NOM," and that the primary issues concerned whether the disclosure was willful, grossly negligent, or part of a bigger governmental conspiracy against NOM. (Def.'s Opp'n at 12-13.) This case presented many significant issues, separate and apart from the Government's admission as to the single inadvertent disclosure, the majority of which were dismissed by the Court on summary judgment. Accordingly, NOM did not substantially prevail in this regard either.

"The starting point for identifying the issues presented for litigation is the face of the Complaint." Christian Coalition Int'l v. United States, 133 F. Supp. 2d 437, 439 (E.D. Va. 2001). The most significant issue or set of issues presented must "objectively represent[] the most significant issue for the taxpayer or the IRS." Don Johnson Motors, Inc., 2008 WL 2200263, at *4 ("Where there are multiple issues it is possible that no one issue is important enough to be considered the 'most significant' issue.") (citations omitted).

12

Based on the face of the complaint, NOM alleged that the Government's "actions constitute[d] gross violations of NOM's statutory and constitutional rights." (Compl. ¶ 2.) NOM brought two counts that alleged willful or grossly negligent conduct regarding unauthorized disclosure and inspection of NOM's tax return information that if proven, would have entitled NOM to punitive damages. (Compl. ¶¶ 93-117.) To be clear, this case was not brought to determine "whether the IRS unlawfully disclosed NOM's 2008 IRS Form 990, Schedule B," as NOM claims. (See Pl.'s Mem. at 5.) The Government conceded this issue in its answer. (Answer at 13-14, ¶ 78 ("The United States admits that the IRS inadvertently disclosed one copy of Plaintiff's 2008 Form 990 unredacted Schedule B to a single third party.")). Stated differently, the Government admitted NOM's "primary and most significant issue" on December 2, 2013 when the Government filed its answer. Yet, the litigation continued for over six more months, because the Government was forced to defend NOM's unfounded claims of willful and grossly negligent conduct.

Ultimately, the Court granted the Government's motion for summary judgment on almost every claim and issue, only leaving for trial the issue of damages arising from the single, inadvertent disclosure. (Mem. Op. at 32.) The end result of this litigation is exactly what NOM already knew as early as December of 2013, if not prior: the IRS inadvertently disclosed

13

a single copy of an unredacted 2008 IRS Form 990, Schedule B. Subsequently, with all other claims dismissed, the parties settled for $50,000, inclusive of actual damages and costs related to that single disclosure. NOM's attempt to conflate this outcome as the primary or most significant issue "does not change the fact that, at heart, this case presented a series of claims against the IRS, the vast majority of which were determined in the IRS's favor" on summary judgment. Goettee, 192 F. App'x at 223. Accordingly, NOM did not substantially prevail as to the issues presented.

### C. The Government's Position

Alternatively, even if NOM had substantially prevailed as to the amount in controversy or as to the issues presented, which it did not, the Court finds that NOM would still not be entitled to a fee award because the Government's position was substantially justified. "To be 'not substantially justified,' the litigation position of the IRS must be unreasonable, without a reasonable basis in law or in fact." In re Southeast Stores, Inc., 156 B.R. 160, 164-65 (Bankr. E.D. Va. 1993) (citing Pierce v. Underwood, 487 U.S. 552, 565-66 (1988); Graham v. United States, 981 F.2d 1135, 1139 (10th Cir. 1992)); see also Ripley v. Comm'r of Internal Revenue, No. 97-1510, 1998 WL 67801, at *1 (4th Cir. Feb. 20, 1998) ("Substantially justified under §

14

7340(c)(4) represents a position that is justified to a degree that could satisfy a reasonable person . . . .").

Here, the Government's position was reasonably based in law and in fact. While the Government conceded the single inadvertent disclosure -- which alone is insufficient to establish that its position was not substantially justified, see Pierce, 487 U.S. at 569 (stating the Government "could take a position that is substantially justified, yet lose") -- it reasonably contested NOM's unfounded conspiracy allegations, and unfounded willful disclosure and inspection allegations that would have supported a claim for punitive damages if properly proven. All of these allegations, however, were dismissed on summary judgment. Accordingly, the Government's position was substantially justified. See Jones v. United States, 207 F.3d 508, 513 (8th Cir. 2000) ("[T]he district court quite rightly concluded that the government's aggressive resistance to the [Plaintiffs'] various and excessive damages claims, including the claim for punitive damages, was entirely warranted.").

### IV. Conclusion

For the reasons stated above, in strictly construing the fee-award statute in favor of the Government, the Court will deny NOM's Motion in its entirety. Accordingly, the Court need not address the reasonableness of NOM's $691,025.05 fee request.

15

An appropriate order will follow.

|  | /s/ |
|---|---|
| October 16, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

16